3020.000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

**JACKIE WAYNE, JR.,**

Plaintiff,

v.

**OFFICER RALPH KIRK #21, OFFICER FERNANDO MUNIZ #44, SGT. FABIANI #6, OFFICER BILL COPP #37 and VILLAGE OF STONE PARK**, an Illinois Municipal Corporation,

Defendants.

No.: **2013-cv-08540**

Judge Jorge L. Alonso

## PLAINTIFF'S MOTION TO COMPEL
## EXPERT OPINION BASIS MATERIALS

NOW COMES the Plaintiff, Jackie Wayne, Jr., by and through his attorneys, Ekl, Williams & Provenzale LLC, and respectfully moves this Honorable Court for entry of an Order compelling all materials relied upon and/or reviewed by the Defendants' disclosed F.R.C.P. 26(a)(2)(B) expert witness, Daniel Yohanna, M.D., pursuant to F.R.C.P. 37(a)(3)(1), in support whereof, the Plaintiff states as follows:

### Background

1.      Pursuant to the Order of the Magistrate Judge granting the Defendants' amended motion for a Rule 35 mental examination of the Plaintiff (**D/E #72**), the Plaintiff sat for nearly 8 hours of neuropsychological testing and evaluation on May 21, 2015.

2.    Pursuant to the Defendants' amended motion (**D/E #58**) and the

Court's order above, the testing and evaluation was conducted by examiners

selected by the Defendants, Daniel Yohanna, M.D., and Robert Fink, Ph.D.

3.    As part of their Rule 35 mental examination of the Plaintiff, Dr. Fink

(or Dr. Yohanna himself or both, it is somewhat unclear), administered the

following battery of tests:

- Weschler Adult Intelligence Scale - 4th Edition (WAIS-IV)
- Wide Range Achievement Test - 4th Edition (WRAT-IV; Word Reading & Sentence Comprehension Subtests)
- Mini-Mental Status Examination (MMSE)
- Repeatable Battery for the Assessment of Neuropsychological Status (RBANS)
- Test of Memory Malingering (TOMM)
- Word Memory Test (WMT)
- Trail Making Test A & B (Trails A & B)
- Personality Assessment Inventory (PAI)
- Beck Depression Inventory - 2nd Edition (BDI-II)
- Beck Anxiety Inventory (BAI)
- Minnesota Multiphasic Personality Inventory - 2nd Edition (MMPI-2)
- Detailed Assessment of Posttraumatic Stress (DAPS)
- Trauma-Symptom Inventory - 2 (TSI-2)
- University of Chicago Neuropsychological History Questionnaire (NHQ)

**Exhibit A,** p.2225.

4.    On September 14, 2015, the Defendants disclosed the report of Dr.

Yohanna by regular mail, which disclosure was not received by the Plaintiff's

counsel until Thursday, September 17, 2015.  No report of Dr. Fink was or has been

disclosed by Defendants under Rule 26(a)(2)(B).  In his report, Dr. Yohanna opines

that the Plaintiff has malingering symptoms of Post-Traumatic Stress Disorder

(PTSD), depression, and anxiety for secondary gain.  **Exhibit A,** p.2219.

5. Dr. Yohanna also states in his opinion report, in support of his methodology used to arrive at his opinion, that "[It is customary to complete neuropsychological testing during an IME to assist forming opinions about the patient's general cognitive abilities and personality. I reasonably rely upon the neuropsychological tests, *as well as Dr. Fink's interpretation of those tests,* in the ordinary course of my business so as to gain a complete understanding of a patient's cognition and personality. Mr. Wayne's neuropsychological test results, *as well as my opinions formed from those results,* are included in this report for completeness." Id. (emphasis added).

6. Prior to this disclosure, and in anticipation of it, Plaintiff served a Rule 34 Request for Production on the Defendants on August 17, 2015, specific to the work of the Defendants' chosen Rule 35 examiners, returnable on September 16, 2015. **Group Exhibit B.** Therein specifically, the Plaintiff requested as to each examiner the following at Request #9:

> [The examiner's] entire file related to this matter including, but not limited to, written or computer generated reports, narratives, test stimuli, interview notes, subject responses, psychological tests administered, neuropsychological tests administered, test manuals, raw data and/or scaled scores of all testing administered, letters, memos, notes, final and drafts of same, where said documents were not identified in [the examiner's] expert report.

7. After Plaintiff agreed to Defendants' request for an extension to respond to the Plaintiff's Rule 34 expert production requests, the Defendants served upon the Plaintiff their formal responses (and almost immediately following, amended responses) on September 23 and 24, 2015, including therein an objection

to response #9, refusing to produce all material responsive to request #9 because, first, "[I]llinois law prohibits the disclosure of raw data from neuropsychological tests except to an identified neuropsychologist," and then by amendment, because "[P]sychological ethical obligations prohibit the disclosure of raw data from neurological tests except to an identified neuropsychologist." **Group Exhibit C**.

### LR 37.2 Compliance Certification

8.      Thereafter, on September 25, 2015, the parties engaged in email and telephonic communications to attempt to resolve the Defendants' and their evaluators' objection to producing the responsive tests and materials.  During these communications, the Defendants pointed out to Plaintiff that they withdrew their objection to the disclosure based upon 740 ILCS 110/3(c), and confirmed that the basis of their objection is the examiners' "psychological ethical obligations."  When pressed by the undersigned during telephonic communications to articulate what that means, opposing counsel stated that she is relaying what the examiners told her.  The undersigned then indicated that I would ask this Court to direct the examiners to appear before the Court to articulate the "ethical basis," but opposing counsel objects to that.

9.      Beyond the above, however, and despite the good faith efforts of the parties after email and telephonic communications, they are at an impasse and require the intervention of the Court to resolve the dispute.  **Group Exhibit D.**  At this point, the issue is properly framed as whether neuropsychological / psychological tests administered to Plaintiff pursuant to a Court Ordered Rule 35

mental examination, and related testing manuals, the raw data results, scaled

scores, etc., are discoverable over the ethical objections of the examiners.

## Argument

10.    The Federal Rules of Civil Procedure govern the discoverability of

materials reviewed and/or relied upon by an expert opinion witness.  Specifically,

F.R.C.P. 26(a)(2)(B)(ii) requires the disclosure of "the facts or data considered by the

witness in forming the [opinions]."  F.R.C.P. 26(a)(2)(B)(ii) (West 2015).  Otherwise

and generally, Rule 26(b)(1) allows that "[P]arties may obtain discovery regarding

any nonprivileged matter that is relevant to any party's claim or defense . . ."

F.R.C.P. 26(b0(1) (West 2015).

11.    The requested materials and data clearly are facts or data considered

by the witness in forming his opinions - Dr. Yohanna expressly says that he

specifically relied upon the tests and Dr. Fink's interpretations of the tests in

forming his opinions.  **Exhibit A,** p.2219.  The requested material is therefore

clearly and specifically discoverable under either Rule 26(a), as a compulsory expert

disclosure, or under Rule 26(b), as material that is relevant to the Defendants'

defenses.  In fact, the requested materials are highly relevant because Dr. Fink

interpreted the test results as supporting the Plaintiff's claim that he suffers from

PTSD, where Dr. Fink states in his report "Nonetheless, the symptoms endorsed

across self-report measures [of the neuropsychological testing] suggest that Mr.

Wayne is currently experiencing some residual psychological distress that he

associates with the traumatic event of his February 2013 arrest.  In light of the

overall clinical picture, these symptoms are consistent with a subsyndromal manifestation of PTSD.[1]"

12. While Defendants and their examiners object to the disclosure of the requested materials to anyone other than an identified neuropsychologist, the discoverability of this type of requested materials directly to a party has already been squarely addressed in this District in the context of the same objection that disclosure would compromise the tests. In <u>Mayer v. Village of South Holland</u>, 2008 WL 4679483 (N.D.Ill., May 8, 2008) (Hart, J.), the District Court held that "raw test data, test protocols, score sheets, notes" and the like related to the administration of a test, even if a psychological test under 740 ILCS 110/3(c), were all discoverable because there is no concern that the disclosure of the materials would compromise the test where an appropriate protective order is in place covering the responsive materials. Id., at *3 ("Even if the test is a psychological test, there is another reason why the disclosure-to-another-psychologist [of 110/3(c)] would not apply. Section 3(c) only prohibits disclosure of test materials that would compromise the test. Here, it would be appropriate to disclose the materials in accordance with a protective order that limits who will see the materials and prevents those persons from further disclosure. Under those circumstances, disclosure would not compromise the test.").

---

[1]The Defendants did not disclose Dr. Fink's report or Dr. Fink as their expert opinion witness under Rule 26(a)(2)(B), perhaps for obvious reasons given his disagreement with the conclusions of Dr. Yohanna.

13.     Here, there likewise is no concern that disclosure of the requested materials would compromise the test.  First, the tests have already been administered to the Plaintiff, so there is no risk that the fairness or objectivity of the tests could be compromised as to the administration on the Plaintiff after the fact.  Second, there is a protective order already in place in this litigation, and in LR37.2 correspondence, the undersigned has already agreed to and designated all responsive materials as confidential.  *See* **Group Exhibit D**.

14.     Beyond this, neither the Defendants nor the examiners have articulated the specifics of the "psychological ethical obligations" beyond what is set out in the Illinois statute the Defendants initially cited as the basis of the objection and have since withdrawn.  For this reason, because opposing counsel seems only able to relay the objections of the examiners, the Plaintiff asks this Court to direct he examiners to appear on a date certain in the near future so as to articulate the specific basis of the objections.  Regardless, the "ethical obligations," which appear to be nothing more than the basis of the Illinois statute that mirrors what they claim, cannot trump the Plaintiff's right to know relevant and material information that is essential to effective cross examination, especially where it directly bears on the weight of the expert's opinion testimony.

15.     Specifically, no objection based upon the ethical obligation of the examiner can overcome the substantial interest that the Plaintiff has in the requested material, particularly given that Dr. Fink, the person who administered some, if not all, of the tests, has given an opinion *based on interpretation of the test*

*results* that the Plaintiff suffers from symptoms consistent with subsyndromal manifestation of PTSD, an opinion which contradicts the opinion of Dr. Yohanna.

16.     Finally, the refusal to produce the requested materials on "ethical" grounds appears to be either manufactured or opportunistic.  Specifically, in <u>Hart v. Roundy's Supermarkets, Inc.</u>, 2011 WL 3687622 (Aug.23, 2011) (Finnegan, MJ), a licensed psychologist, Brad Grunert, Ph.D, the Plaintiff's expert PTSD witness, offered to make raw data from his tests available to the defendant (not another neuropsychologist) as a measure to avoid subjecting the Plaintiff to Defendant's Rule 35 mental examination.  Id., at *2.  In rejecting the Plaintiff's objection to the Rule 35 examination, the Court there never noted that such a suggestion of disclosure to the Defendant was unethical, and neither did the examining psychologist, for that matter.  Respectfully, Plaintiff submits that the claim of any ethical obligation here is wholly unfounded.

17.     As a matter of timing and scheduling, because the deposition of Dr. Yohanna has been scheduled for October 9, 2015, so as to allow Plaintiff to comply with the Court's October 14 deposition deadline, and also to the extent that the Defendants have yet to give the Plaintiff any date to depose Dr. Fink, the Plaintiff prays this Court to either extend or suspend the existing deposition deadline for Plaintiff to depose Defendants' 26(a)(2)(B) witnesses and Dr. Fink until a reasonable date after the production requested herein has been provided, so that Plaintiff may have adequate opportunity to review the responsive materials before the deposition of the examiners, such that the depositions of these examiners may

be rescheduled otherwise.

WHEREFORE, the Plaintiff respectfully prays this Honorable Court to enter an Order compelling the Defendants to:

A.    produce all testing materials responsive to Plaintiffs' expert Requests for Production 9 without further hearing on the matter; or

B.    to enter an order directing Daniel Yohanna, M.D., and Robert Fink, Ph.D., to appear before this Court on date certain in the near future to establish the specific ethical basis of the non-disclosure of the requested materials so that Plaintiff may have the opportunity to specifically address the basis of the objections; and

C.    to otherwise extend the Plaintiff's deadline to depose the Defendants' Rule 26(a)(2)(B) experts and Dr. Fink to a reasonable date after the Defendants' production of the requested materials; and

D.    any other relief this Court deems just and appropriate.

Respectfully submitted by:

By: **s/ Patrick L. Provenzale**
Patrick L. Provenzale, #6225879
Ekl, Williams & Provenzale LLC
901 Warrenville Road, Suite 175
Lisle, IL 60532
(630) 654-0045
(630) 654-0150 *Facsimile*
pprovenzale@eklwilliams.com
*Attorneys for Plaintiff*